```
 1

 2    UNITED STATES BANKRUPTCY COURT

 3    SOUTHERN DISTRICT OF NEW YORK

 4    Lead Case No. 10-22431-rdd

 5    Adv. Proc. No. 10-08361-rdd

 6    - - - - - - - - - - - - - - - - - - - - - -x

 7    In the Matter of:

 8    RICHARD GRIFFIN and DESMARIE GRIFFIN,

 9                   Debtors.

10    - - - - - - - - - - - - - - - - - - - - - -x

11    GRIFFIN, et al.,

12                         Plaintiffs,

13          v.

14    AMERICAN HOME MORTGAGE SERVICING, INC.,

15                         Defendant.

16    - - - - - - - - - - - - - - - - - - - - - -x

17                         U.S. Bankruptcy Court

18                         300 Quarropas Street

19                         White Plains, New York

20

21                         August 31, 2010

22                         10:15 a.m.

23    B E F O R E:

24    HON. ROBERT D. DRAIN

25    U.S. BANKRUPTCY JUDGE
```

```
 1
 2              MODIFIED BENCH RULING ON MOTION TO DISMISS
 3
 4
 5    Transcribed by:   Esther Accardi
 6    A P P E A R A N C E S :
 7    BLEICHMAN AND KLEIN
 8          Attorneys for Richard and Desmarie Griffin
 9          268 Route 59
10          Spring Valley, New York 10977
11
12    BY:   JOSHUA N. BLEICHMAN, ESQ.
13
14
15    AKERMAN SENTERFITT LLP
16          Attorneys for American Home Mortgage Servicing, Inc.
17          335 Madison Avenue
18          Suite 2600
19          New York, New York 10017
20
21    BY:   JORDAN M. SMITH, ESQ.
22
23
24
25
```

```
 1                         BENCH RULING
 2            THE COURT:  The Court has before it a motion to
 3   dismiss under Bankruptcy Rule 7012 by the sole defendant in
 4   this adversary proceeding, American Home Mortgage Servicing,
 5   Inc., or AHMSI, for failure to state a claim.
 6            The plaintiffs in their complaint have asserted three
 7   causes of action.
 8            The first is for breach of the Real Estate Settlement
 9   Procedures Act, 28 U.S.C. Section 2601 et seq., or RESPA.  The
10   second is for breach of contract.  And the third is for
11   negligence.
12            The RESPA violation is premised upon two different
13   theories, which would independently if, in fact, true,
14   constitute breaches or violations of RESPA.
15            First, the plaintiffs allege, although they did not
16   allege it in the paragraphs actually stating a cause of action,
17   but they allege it in their complaint, that they provided a
18   proper qualified written request under Section 2605(e) of
19   RESPA, and that, while AHMSI, the servicer of their loan,
20   complied in part with that request, it did not comply in full
21   with it, and, therefore, it breached its obligation to do so
22   under Section 2605.
23            Secondly, the complaint alleges that the servicer
24   misapplied certain payments, unspecified, to incorrect amounts
25   allegedly due under the loan and that, therefore, because the
```

1   lender or the servicer had not corrected such misapplications,
2   it had also violated Section 2605(e).
3           The breach of contract claim is premised on the latter
4   set of allegations, i.e. the alleged misapplications, as is the
5   negligence claim.  And, in addition, it's also premised on a
6   failure to allegedly respond fully to the qualified written
7   request.
8           When considering a motion under Federal Rule of Civil
9   Procedure 12(b)(6), which is incorporated in Bankruptcy Rule
10  7012, the Court must assess the legal feasibility of the
11  complaint, not weigh the evidence that might be proffered in
12  its support. Koppel v. 4987 Corp., 167 F.3d 125, 133 (2d Cir.
13  1999).  The Court's consideration is "limited to facts stated
14  on the face of the complaint and where the documents appended
15  to the complaint are incorporated in the complaint by
16  reference, as well as to matters of which judicial notice may
17  be taken."  Hertz Corp. v. City of New York, 1 F.3d 121, 125
18  (2d Cir. 1993), cert. denied 510 U.S. 1111 (1993).
19          The Court accepts the complaint's factual allegations
20  as true and must draw reasonable inferences in favor of the
21  plaintiff. Tellabs Inc. v. Makor Issues & Rights Ltd., 551 U.S.
22  308, 323 (2007).  Federal Rule of Civil Procedure 8(a),
23  incorporated in Bankruptcy Rule 7008, does not, moreover,
24  require a claimant to set forth any legal theory justifying the
25  relief sought, only sufficient factual reference to show that

1    the claimant may be entitled to some form of relief.  Newman v.

2    Silver, 713 F.2d 14, 15 (2d Cir. 1983), and Tolle v. Caroll

3    Touch Inc. 997 F.2d 1129, 1134 (7th Cir. 1992).

4             However, if a complaint's allegations are clearly

5    contradicted by documents incorporated into the pleadings by

6    reference, the Court need not accept them.  Labajo v. Best Buy

7    Stores, L.P., 478 F. Supp.2d 523, 528 (S.D.N.Y. 2007).

8             Moreover, the court is "not bound to accept as true a

9    legal conclusion couched as a factual allegation." Papasan v.

10   Allain, 478 U.S. 265, 286 (1986).  Instead, the complaint must

11   state more than labels and conclusions and a formulaic

12   recitation of the elements of a cause of action will not do.

13   Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  That

14   is, as set forth in Twombly, Rule 8 requires not detailed

15   factual allegations, but demands more than an unadorned "The

16   defendant unlawfully harmed me accusation," Ashcroft v. Iqbal,

17   1291 S. Ct. 1937, at 1949 (2009).

18            Relatedly, while the Supreme Court has confirmed in

19   the light of the notice pleading standard under Rule 8(a) that

20   a complaint does not need detailed factual allegations to

21   survive the Rule 12(b)(6) motion, see Erickson v. Pardus, 127

22   S. Ct. 2197, 2200 (2007), the complaint's "factual allegations

23   must be enough to raise a right to relief above the speculative

24   level." Bell Atlantic v. Twombly, 550 U.S. 555.  The complaint

25   must contain sufficient facts accepted as true to state a claim

1   that is "plausible on its face." Id. at 570." In other words,

2   if the claim would not otherwise be plausible on its face, the

3   plaintiff must allege sufficient facts to "nudge the claim

4   across the line from conceivable to plausible." Id.  Otherwise,

5   the defendant should not be subject to the burdens of discovery

6   and the worry of overhanging litigation.

7           Evaluating plausibility is a "context specific task

8   that requires the reviewing court to draw on its judicial

9   experience and common sense.  But where the well pleaded facts

10  do not permit the court to infer more than mere possibility of

11  misconduct the claimant has alleged, but it has not shown, that

12  the pleader is entitled to relief."  Ashcroft v. Iqbal, 1291 S.

13  Ct. at 1950 (internal citations omitted).

14          Where there are well pleaded factual allegations the

15  Court should assume their veracity and then determine whether

16  they plausibly give rise to entitlement to relief.  "The

17  plausibility standard is not akin to a probability requirement,

18  but it asks for more than a sheer possibility that a defendant

19  has acted unlawfully." Id. at 1949.  In sum, therefore, in

20  dismissing Twombly the Supreme Court has observed that "The

21  pleading standard Rule 8 analysis does not require detailed

22  factual allegations, but it demands more than an unadorned

23  "the-defendant-unlawfully-harmed-me accusation."

24          Therefore, in determining whether a claim should

25  survive a motion to dismiss, the court must first identify each

1  element of the cause of action." Id. at 1947.  Next the court

2  must identify the allegations that are not entitled to the

3  assumption of truth because they are legal conclusions, not

4  factual allegations.  Id. at 1951.  Finally, the court must

5  assess the factual allegations in the context of the elements

6  of the claim to determine whether they plausibly suggested

7  entitlement to relief.  Id.

8              Here, one of the causes of action, breach of contract,

9  is easily dealt with on the face of the complaint.  That is

10 because the complaint is solely against the servicer of the

11 loan, AHMSI, and AHMSI is not in contractual privity with the

12 debtors.  Certainly there's no allegation of such privity in

13 the complaint.  Therefore, AHMSI cannot be liable for breach of

14 contract absent such an allegation or an allegation that it was

15 acting as the agent for someone who was in privity and that

16 privity can be imputed to it, which, again, is not alleged.

17 See Diamond v. OneWest Bank, 210 WL 1742536 at page 3, (D.

18 Ariz. April 29, 2010), and Conder v. Home Savings of America,

19 680 F. Supp. 2d 1168, 1174 (C.D. Cal. 2010), as well as the

20 authorities cited therein.

21             So AHMSI's motion with regard to the breach of

22 contract claim is granted.

23             The second cause of action for negligence is also

24 easily dealt with on the face of the complaint.  That is

25 because the plaintiffs, to sustain a tort action for

1  negligence, must assert more than a simple breach of contract:

2  they must assert a legal duty that is independent of the

3  contract that has been breached.  See In re Jacques, 416 B.R.

4  63, 81 (Bankr. E.D.N.Y. 2009), and the cases cited therein,

5  including Hamilton v. Beretta U.S.A. Corp., 96 N.Y.2d, 222, 232

6  (2001), and In re Johns Insulation, Inc., 221 B.R. 683, 691

7  (Bankr. E.D.N.Y. 1998).

8         I do not believe that the complaint sets forth a

9  specific duty owed to the plaintiffs by AHMSI other than

10 AHMSI's responsibilities under RESPA, and, as I'll discuss in a

11 moment, I conclude that the complaint and the record before me,

12 which includes all of the documents referred to and

13 incorporated into the complaint, with the exception of the

14 purported qualified written request of the plaintiffs, does not

15 state a claim for violation of RESPA.  Therefore, the complaint

16 also would not state a claim for negligence against AHMSI.  See

17 In re Jacques, 416 B.R. at 82.

18        The RESPA statute sets forth two separate duties that,

19 as I've noted, allegedly have been breached by AHMSI.

20        First, under Section 2605(e)(1), the servicer or

21 lender in respect of a qualified loan-- and there is no dispute

22 here that this is a qualified loan for purposes of this motion

23 to dismiss-- must respond to a qualified written request from

24 the borrower or its agent for information relating to the

25 servicing of the loan with a written response acknowledging

1    receipt of the correspondence within twenty days.  And then, as

2    set forth in (e)(2), not later than sixty days after receipt

3    from any borrower of a qualified written request under

4    paragraph 1, the servicer shall (A) make appropriate

5    corrections in the account of the borrower, including the

6    crediting of any late charges or penalties, and transmit to the

7    borrower a written notification of such correction, and (B),

8    after conducting an investigation, provide the borrower with a

9    written explanation or clarification that includes, to the

10   extent applicable, a statement of the reasons for which the

11   servicer believes the account of the borrower is correct as

12   determined by the servicer.

13           As is evident from the definitional provisions that

14   I've quoted as well as the definition of "servicing" that

15   appears in subsection (i)(3) of Section 2605, a qualified

16   written request for purposes of 2605(e)(1) is for information

17   relating to the servicing of such loan.  And the qualified

18   written request must include a statement of the reasons for the

19   belief of the borrower, to the extent applicable, that the

20   account is in error, or provide sufficient detail to the

21   servicer regarding other information sought by the borrower.

22   See 2605(e)(1)(B)(ii).

23           The definition of servicing that appears in 2605(i)(3)

24   states "The term servicing means receiving any scheduled

25   periodic payments from a borrower pursuant to the terms of any

1   loan, including amounts for escrow accounts described in

2   Section 2609 of this title, and making the payments of

3   principal and interest and such other payments with respect to

4   the amount received from the borrower as may be required

5   pursuant to the terms of the loan."

6           All of this is consistent with the stated purpose of

7   RESPA, which is to help borrowers engaged in a dispute with a

8   lender or servicer of the loan to overcome the difficult task

9   of obtaining account information or getting an actual person to

10  take their complaint seriously, which the Seventh Circuit

11  described as "vexing and protracted undertaking."  Miller v.

12  McCalla, Raymer, Padrick, Cobb, Nichols & Clark, L.L.C., 214

13  F.3d 872 (7th Circuit 2000).

14          To have a viable cause of action under RESPA, however,

15  individuals must show not only the failure to comply with the

16  provisions of Section 2605, but also actual damages to the

17  borrower as a result of the failure, as set forth in

18  2605(f)(1)(A), as well as any additional damages that the court

19  may allow in the case of a pattern or practice of noncompliance

20  with the requirements of Section 2605, in an amount not to

21  exceed 1,000 dollars.

22          Thus, the courts have consistently dismissed

23  complaints under RESPA if they do not allege actual damages or

24  state merely that in a conclusory fashion the defendant caused

25  damages to the plaintiff.  See, for example, Gorham v. Bank of

1    America, N.A., 2010 U.S. Dist. LEXIS 41797 (N.D.N.Y Apr. 28,

2    2010) at page 10, and Jones v. Select Portfolio Servicing,

3    Inc., 2008 U.S. Dist. LEXIS 33284 at 9-10 (E.D. Pa. Apr. 22,

4    2008), as well as Gorham-DiMaggio v. Countrywide Home Loans,

5    2009 U.S. Dist. LEXIS 52078 at page 31 (N.D.N.Y. June 19,

6    2009).

7              Here, as I noted during oral argument, although the

8    alleged qualified written request sent by the Griffins is

9    referred to and incorporated in the complaint, I've not been

10   provided with a copy of it.  And I do not know whether as a

11   whole it complies with the definitional requirements of Section

12   2605(e).  However, it appears clear to me from the record of

13   oral argument that the request did not state the reasons for

14   the borrowers' belief that the account was in error or provide

15   in sufficient detail to the servicer, the rationale for the

16   other information sought and how it relates to the servicing of

17   the loan, as such term is defined in Section 2605(i), which

18   relates to the allocation of payments in respect of the loan.

19             As detailed in the complaint, the alleged deficiencies

20   in the response to the QWR all go only, at best, obliquely, to

21   servicing of the loan.  Instead, they QWRsought such

22   information as inspection reports and appraisals, a copy of the

23   mortgage pooling and servicing agreement, a copy of the

24   prospectus offered to investors and any underlying trust, all

25   written loss mitigation rules and the workout procedures

1  related to any defaults regarding the loan and similar loans,

2  copies of all servicing, master servicing, subservicing,

3  contingency servicing, special servicing, or backup servicing

4  agreements with respect to the account and whether the loan is

5  subject to any electronic tracking agreement, and whether the

6  servicing of loans is provided pursuant to any type of mortgage

7  electronic registration system, and, if so, providing a copy of

8  that system's procedures manual, whether this is a MERS

9  designated mortgage loan and if the answer iss yes, to identify

10 the electronic agent and the type of mortgage electronic

11 servicing system, identifying whether the mortgage is part of a

12 mortgage warehouse loan, and, if so, stating the full name and

13 address of the lender and attaching a copy of warehouse loan

14 agreement, and if whether upon a notice of a default or not the

15 mortgage warehouse lender has the right to override any

16 servicers or subservicers and provide instructions directly to

17 the electronic agent, and whether the mortgage is part of a

18 whole loan sale agreement, and, if the answer is yes, then

19 asking the recipients to state the name and address of the

20 purchaser, the custodian, the trustee, the electronic agent,

21 and the servicer or subservicer.

22         Other information that, arguably, goes closer to the

23 purposes of a QWR under the statute are as follows:  identify

24 the provisions under the deed of trust and/or note that

25 authorizes charging each and every fee against the loan,

```
 1   summary of all fixed or standard legal fees approved for any

 2   form of legal services rendered in connection with this

 3   account, and a copy of the LSAMS transaction history report for

 4   the debtors' mortgage loan account with a detailed description

 5   of all fee codes.

 6              The latter three categories arguably fall within the

 7   definition of information that should be responded to in the

 8   QWR.  However, the former requests, to my mind, without further

 9   explanation of why they were sought, or why they should have

10   been in the QWR, go beyond the request of information relating

11   to loan servicing.  Instead, it appears to me it was sought to

12   assist the debtors, perhaps, in the potential negotiation of

13   the loan and/or challenging the bona fides of the loan as it

14   was originated.  See Williams v. Wells Fargo Bank N.A., 2010 WL

15   146, 3521 (N.D. Cal. Apr. 13, 2010) at page 3-5.

16              It's also alleged by the plaintiff that the failure to

17   correct alleged misapplications of funds by the servicer and --

18   by the servicer constitutes a violation of RESPA Section

19   2605(e)(2)(A).  The motion to dismiss makes two points in

20   response.

21              First, it alleges, citing In re Jacques, 416 B.R. at

22   63, that the complaint does not allege actual damages and

23   proximate cause thereof with a sufficient amount of

24   plausibility to assert a claim under RESPA.  Relatedly, the

25   motion to dismiss states that the complaint is wholly
```

1   conclusory as to the payments that were unapplied and, in fact,

2   does not state more, in effect, than that the debtors believed,

3   or believe certain payments were unapplied, and, therefore,

4   that the damages, as asserted in the complaint, are wholly

5   speculative, and, therefore, would not pass muster under

6   Twombly or Iqbal.

7           It seems to me that if a complaint in a nonspeculative

8   fashion asserted that a servicer or a lender had misapplied the

9   borrowers' payments on the loan, it would clearly assert

10  damages.  And the failure to correct those damages, to my mind,

11  would constitute proximate cause of actual damages in that the

12  defendant would still be improperly billed for its loan, which

13  seems to fit, to my mind, exactly within the language and

14  purpose of RESPA.  That is different -- or that would be a

15  different scenario than simply saying that, for example, the

16  servicer's failure to respond to a QWR caused damages without

17  specifying how those damages were caused.  See Hutchinson v.

18  Delaware Savings Bank FSB, 410 F. Supp. 2d 374 (D.N.J. 2006).

19  And Cortez v. Keystone Bank, 2000 U.S. Dist. LEXIS 5705 at 39-

20  40 (E.D. Pa. May 2, 2000).

21          The problem with the complaint, however, is that the

22  damages, as pled here, particularly when tied into the

23  requirements of a qualified written request under Section

24  2605(e)(2)(A), or rather the failure to allege a request that

25  ties into a duty under Section 2605(e)(2)(A) means that the

1   alleged damages are, in fact, speculative under RESPA and fall
2   afoul of Twombly and Iqbal.
3          There's nothing in the complaint that suggests that
4   the alleged QWR included a statement of the reasons for the
5   borrowers' belief that the account was in error.  Given that,
6   and given the failure to identify errors that are, at least,
7   plausible, as opposed to grounds for additional questions that
8   the debtors may have of the defendant, I believe that the
9   complaint does not set forth a cause of action for failure to
10  make appropriate corrections.  I don't believe the statute puts
11  the onus on the lender to prove a negative.
12         Some error or potential error must be identified in
13  the QWR and/or identified in the complaint.  And that isn't the
14  case here beyond the nebulous assertion that the debtors
15  believe that the payments were misapplied.
16         So, while misapplication would constitute proximate
17  cause of damages, the complaint here does not, except in an
18  entirely speculative way, assert such misapplication.  And,
19  therefore, I believe it fails the tests of Iqbal and Twombly.
20  See In re Jacques, 416 B.R. at 74.
21         So the defendant can submit an order consistent with
22  my ruling.
23         As I stated during oral argument, it seems to me that
24  AHMSI continues to owe an ongoing obligation to the Griffins
25  under RESPA and that if the Griffins want to better understand

1     their payment history and how the servicer has applied the

2     monies that have been paid, they can make a new RESPA request

3     that pinpoints their concerns based on the information that

4     they have and that has been previously provided to them.  And

5     if that request is not properly responded to, (then, of course,

6     more detail would be required in the response based upon how

7     much detail is put in the inquiry) then the debtors may have a

8     cause of action that they can commence a lawsuit over.

9             But based upon the rationale of my analysis of the

10    problems with the complaint under RESPA, I conclude that the

11    present complaint does not state a claim under RESPA.  It,

12    accordingly, doesn't state a claim under New York law for

13    negligence given that there's no other duty that the servicer

14    owes the Griffins other than compliance with RESPA.  And it

15    clearly does not support the breach of contract claim given the

16    lack of privity between the servicer and the Griffins.

17

18

19

20

21

22

23

24

25